*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1362**

In re the Marriage of:
Hniya Abdenbi Kouttay, petitioner,
Respondent,

vs.

Ali Jama Yahia,
Appellant.

**Filed July 7, 2014
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-FA-12-3399

Rachael C. Peters, J. Virgil Bradley, Cornerstone Family Law, Minneapolis, Minnesota (for respondent)

John P. Guzik, Guzik Law Office, PA, Roseville, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Chutich, Judge; and Huspeni, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Hniya Abdenbi Kouttay and Ali Jama Yahia were married for approximately 14 years before they divorced. Their dissolution decree requires Yahia to pay temporary spousal maintenance and child support to Kouttay. On appeal, Yahia argues that the district erred in its finding of his gross income for purposes of calculating his child-support obligation and erred by failing to consider the statutory spousal-maintenance factors. We affirm.

## FACTS

Kouttay and Yahia were married in 1998 and have three children. Kouttay commenced dissolution proceedings in May 2012. At trial, the parties contested the issues of child support and spousal maintenance, among others. Both Kouttay and Yahia appeared *pro se*.

At the time of the trial, Yahia was 49 years old. He had been self-employed as a taxi driver for approximately nine years. At the time of the trial, Kouttay was 36 years old. She was the primary caretaker of the children. She also was a full-time college student, studying nursing, and she anticipated finishing her coursework in 2015 and becoming self-supporting at that time.

In the judgment and decree, the district court awarded the parties joint legal custody of their children and awarded sole physical custody to Kouttay. For purposes of calculating child support, the district court made the following finding about Yahia's income:

> Ms. Kouttay claims Mr. Yahia's average gross monthly income is $6,500. Mr. Yahia states average gross monthly income as $2,098. The Court finds that Mr. Yahia's income is less than $6,500 but more than $2,098. . . . Mr. Yahia's income certainly fluctuates month to month, but on average, the Court finds that Mr. Yahia's income is approximately $4,300.

With this finding of gross income, the district court calculated Yahia's monthly child-support obligation to be $1,004. The district court also ordered Yahia to pay Kouttay temporary spousal maintenance of $1,180 per month from December 2012 to December 2015.

Yahia moved to amend the judgment and decree. He asked the district court to amend its finding of gross income to conform to the evidence he introduced at trial and to reduce his child-support obligation accordingly. He also asked the district court to eliminate his spousal-maintenance obligation. The district court denied Yahia's motion in substantial part but granted it part. The district court reduced his monthly maintenance obligation from $1,180 to $1,130 based on a clerical error. The district court reconsidered the amount of Yahia's child-support obligation but increased it by $14 to $1,018 based on factors that previously had been reserved. The district court otherwise denied Yahia's motion. The district court expressly found credible Kouttay's assertion that Yahia had underreported his income, in part because Yahia failed to produce certain documents requested by Kouttay concerning his income. Kouttay also moved to amend the judgment and decree based on an issue unrelated to this appeal. The district court granted her motion and issued a second amended judgment and decree. Yahia appeals.

## D E C I S I O N

## I. Child Support

Yahia argues that the district court erred by finding that his gross monthly income is $4,300 for purposes of child support.

The amount of child support is based on each party's gross income. *See* Minn. Stat. § 518A.29 (2012). To find gross income, a district court must consider "any form of periodic payment to an individual, including, but not limited to, salaries, wages, commissions, [and] self-employment income." *Id.*, § 518A.29(a). The term "self-employment income" is defined to mean "gross receipts minus costs of goods sold minus ordinary and necessary expenses required for self-employment or business operation." Minn. Stat. § 518A.30 (2012).

Parties to a dissolution case are obligated to "disclos[e] all sources of gross income." Minn. Stat. § 518A.28(a) (2012). In making findings of the parties' gross income, a district court "may consider credible evidence from one party that the [disclosure] by the other party is false or inaccurate." *Id.*, § 518A.28(c). "Credible evidence" includes "documentation of current or recent income [and] testimony of the other parent concerning recent earnings and income levels." *Id.* A district court may consider the well-accepted reality that some self-employed persons "report a negligible . . . income" yet maintain a standard of living that is greater than possible on that income. *See Ferguson v. Ferguson*, 357 N.W.2d 104, 108 (Minn. App. 1984). When finding the gross income of each party, a district court may make a "reasonable estimate." *Knott v. Knott*, 358 N.W.2d 493, 496 (Minn. App. 1984).

4

This court applies a clear-error standard of review to a district court's finding of a party's gross income. *Ludwigson v. Ludwigson*, 642 N.W.2d 441, 446 (Minn. App. 2002). In doing so, we review the record "in the light most favorable to the [district] court's findings," *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000), and we defer to the district court's credibility determinations, *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). The ultimate question is whether this court is left with a "definite and firm conviction that a mistake was made." *See Vangsness*, 607 N.W.2d at 474. "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Id.* The party challenging a finding on appeal has the burden to show that the finding is clearly erroneous. *See id.*

At trial, Yahia testified that his income often fluctuates due to the nature of the taxi business, which is subject to seasonal variations. He introduced into evidence a number of exhibits to show his earnings for the three-month period of May 2012 to July 2012. His exhibits include 13 "driver settlement summaries," financial statements generated by the company with which Yahia contracts. The driver settlement summaries show Yahia's non-cash fares and tips on a weekly basis, as well as his company-paid operating expenses, including cab-lease fees and credit-card transaction fees. Yahia also introduced evidence of cash receipts and cash tips as well as cash expenses that he pays out of his own pocket, such as gasoline, cellphone, and licensing expenses. This evidence tends to show that Yahia's gross income was $2,098 per month during that three-month period. Yahia also introduced the couple's joint tax returns from 2010 and 2011, which show gross income of $27,358 and $22,337 per year, respectively, or $2,280

5

and $1,861 per month, respectively. Kouttay, however, disputed Yahia's evidence of his gross income. She testified that Yahia had intentionally decreased the quantity of his work during the three-month period for which he submitted documentation. She introduced an exhibit consisting of 15 other driver settlement summaries, and that exhibit tends to show that Yahia earned an average of $4,812 per month before subtracting out-of-pocket expenses. Kouttay also testified that the couple's joint tax returns understated Yahia's earnings.

Yahia contends that the district court's finding concerning his gross income is clearly erroneous because the district court relied on Kouttay's "uncorroborated testimony." Yahia's contention is inconsistent with our standard of review. That some evidence in the record might support the finding Yahia sought does not require a reviewing court to conclude that the district court's finding is clearly erroneous. *See id.* Furthermore, the district court based its finding of Yahia's gross income significantly on its determination that Kouttay was more credible than Yahia. We defer to such a credibility determination because of our "inability to resolve conflicts in the evidence" on appeal. *See id.*

Moreover, the district court's finding concerning Yahia's gross income is supported by Kouttay's evidence. For example, Kouttay introduced an exhibit consisting of a family budget, which shows a monthly net income of $4,000 with monthly household expenses of $3,500. Those amounts are more consistent with a gross income of $4,300 than a gross income of $2,098. In addition, Kouttay introduced a combination of testimony and exhibits that tends to prove that Yahia's gross income was

6

approximately $4,300 per month. She testified that Yahia "was making at least $1,200 clean a week, plus cash." This testimony implies that Yahia earned at least $5,196 per month, plus cash.[1] If we assume that the district court believed Kouttay's testimony on that point, it is not difficult to see how the district court could have considered that evidence, along with Yahia's own evidence, to arrive at an estimate of Yahia's average monthly gross income of $4,300.[2] Kouttay also testified that she requested additional driver settlement summaries from Yahia but that Yahia did not produce them, and the district court relied in part on Yahia's failure to produce the records.

When we review the record in the light most favorable to the district court's findings and draw all reasonable inferences in its favor, we are not left with a "definite and firm conviction that a mistake was made." *See Vangsness*, 607 N.W.2d at 474. Thus, we conclude that the district court did not clearly err by concluding that Yahia's monthly gross income, for purposes of child support, is $4,300.

## II. Spousal Maintenance

Yahia also argues that the district court erred by failing to make appropriate findings of fact on the factors relevant to spousal maintenance.

A district court may grant an award of spousal maintenance if it finds that one of the divorcing spouses either

---

[1]$1,200 per week multiplied by 4.33 weeks per month equals $5,196 per month. *See* Minn. Stat. § 518A.29(d) (2012).

[2]Yahia introduced an exhibit showing that he received an average of $245 per month in cash tips and that he paid an average of $1,153 in out-of-pocket operating costs. $5,196 plus $245 minus $1,153 equals $4,288.

(a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or

(b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn. Stat. § 518.552, subd. 1 (2012). If the district court finds that one of these conditions exists, it may award spousal maintenance "in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to marital misconduct, and after considering all relevant factors." *Id.*, subd. 2. The "relevant factors" are the financial resources of the spouse seeking maintenance to provide for his or her needs independently, the time necessary to acquire education to find appropriate employment, the age and health of the recipient spouse, the standard of living established during the marriage, the length of the marriage, the contribution and economic sacrifices of a homemaker, and the resources of the spouse from whom maintenance is sought. *Id.*; *see also Kampf v. Kampf*, 732 N.W.2d 630, 633-34 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). No single factor is dispositive. *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn. 1984). In essence, the district court balances the recipient's needs against the obligor's ability to pay. *Prahl v. Prahl*, 627 N.W.2d 698, 702 (Minn. App. 2001).

A district court has broad discretion in decisions regarding spousal maintenance, *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984), and this court applies an abuse-of-discretion standard of review, *Erlandson v. Erlandson*, 318 N.W.2d 36, 38, 41 (Minn. 1982). A district court abuses its discretion if its decision is against logic and the facts in the record. *Dobrin v. Dobrin*, 569 N.W.2d 199, 203 (Minn. 1997). The district court must make specific findings when awarding spousal maintenance. *Stevens v. Stevens*, 501 N.W.2d 634, 637 (Minn. App. 1993). If the record lacks findings supporting an award of maintenance, this court may not independently review the record and make conclusions related to the spousal-maintenance factors but, rather, must reverse and remand. *Id.*; *see also Dobrin*, 569 N.W.2d at 203. But this court may "treat statutory factors as addressed when they are implicit in the findings." *Prahl*, 627 N.W.2d at 703. The district court "is not required to make specific findings on every statutory factor if the findings . . . made reflect that the district court adequately considered the relevant statutory factors." *Peterka v. Peterka*, 675 N.W.2d 353, 360 (Minn. App. 2004).

The judgment and decree in this case is somewhat atypical in that it does not contain enumerated findings touching expressly on each of the spousal-maintenance factors. But a sufficient number of relevant factors are implicit in findings that the district court made for general purposes or for purposes of child support. *See Prahl*, 627 N.W.2d at 703. For example, the district court found that Kouttay was unable to provide adequate self-support because she was in school and had not worked during the 14-year marriage. *See* Minn. Stat. § 518.552, subd. 1(b). The district court also made findings concerning Kouttay's financial resources, Yahia's financial resources, the length of the

9

marriage, the time necessary for Kouttay to complete her education in order to find employment, and Kouttay's age. *See id.*, subd. 2. In addition, the standard of living established during the marriage is reflected in various findings, including the finding that Yahia had voluntarily given Kouttay $1,130 per month after the couple had separated. *See id.*

Thus, we conclude that the district court did not err by failing to make factual findings concerning the factors relevant to spousal maintenance.

**Affirmed.**